**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

MICHAEL B. POLITTE,       )
                              )
     Petitioner,         )
                              )
     vs.                  )     Case No. 4:22-CV-1169 JSD
                              )
JOHN MOSLEY, Missouri Director of  )
Division of Probation and Parole,   )
                              )
                              )
     Respondent.       )
                              )
                              )

## <u>MEMORANDUM AND ORDER</u>

This matter is before the Court on Michael Politte's ("Politte" or "Petitioner") petition for writ of habeas corpus (ECF No. 1). Respondent John Mosley, Missouri Director of Division of Probation and Parole ("Respondent") filed a Response to Order to Show Cause (ECF No. 21).[1] Politte filed a Reply in Support of Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 (ECF No. 29). For the reasons set forth below, the petition for writ of habeas corpus is denied.

## I.     BACKGROUND

In 2002, a jury found Petitioner Michael Politte guilty of second-degree murder. After a change of venue from Washington County, the St. Francois Circuit Court sentenced Petitioner to life imprisonment. He was released in April 2022, and remains on parole and under the supervision of the Missouri Board of Probation and Parole.

---

[1] John Mosley, Missouri Director of Division of Probation and Parole, is substituted as the Respondent in this action pursuant to Fed. R. Civ. P. 25(d). *See* https://doc.mo.gov/divisions/probation-parole.

The Court takes the statement of the underlying facts from the Decision, Judgment, and Order of the Circuit Court of Cole County, State of Missouri, on Petitioner's Amended Habeas Corpus Petition (ECF No. 21-89, hereinafter "Cole County Decision"):

[Petitioner], was charged by information with second degree murder, § 565.021 RSMo 2000 (L.F. 615). [Footnote omitted]. On January 29, 2002, [Petitioner's] case proceeded to trial before a jury in the Circuit Court of St. Francois County on a change of venue from Washington County, the Honorable Kenneth W. Pratte presiding (L.F. 10, Tr. 1).

[Petitioner] does not challenge the sufficiency of the evidence to sustain his conviction. Viewed in the light most favorable to the jury's verdict, the evidence adduced at trial was as follows: In the fall of 1998, Rita Politte lived in a double-wide trailer in Washington County, Missouri with her two daughters and [Petitioner], her fourteen-year old son (Tr. 176). Rita had dated a man named Derek Politte (no relation) for a few months when she invited him over for dinner on November 18, 1998 (Tr. 175). During this dinner, [Petitioner] and Rita fought over [Petitioner] asking her for 500 to 600 dollars for a new motorcycle part (Tr. 177–178). Eventually, Rita and Derek went into the living room to watch a movie while [Petitioner] came in and sat on the floor (Tr. 178–179). [Petitioner] just sat on the floor and continuously flicked a lighter while staring at them (Tr. 179). Derek felt so uncomfortable with the situation that he left (Tr. 183).

On December 5, 1998, in the early morning hours at around 6:30 a.m., Leighann Skiles, Rita Politte's neighbor and cousin by marriage, was awakened by a bang on her door (Tr. 195–196). Josh Sansoucie, a friend of [Petitioner's], told her that he needed to call the fire department as Rita's trailer was on fire (Tr. 196–197). Sansoucie ran back outside while Leighann called her father-in-law Chuck Stiles, who lived on the other side of Rita, to inform him about the fire (Tr. 193, 197–198). When Leighann went outside she saw [Petitioner] calmly coming out the side of Rita's house and heard him say to Sansoucie, "Dude, that's my mom on the floor" and asked him if he had a cigarette (Tr. 199–202).

Meanwhile, Chuck Stiles had told his wife to call the fire department while he went to Rita's house (Tr. 213). When he went outside, he saw [Petitioner] and Sansoucie running down toward to Rita's house (Tr. 214). As Chuck finally made it inside Rita's trailer, [Petitioner] and Sansoucie were coming out of [Petitioner's] bedroom and [Petitioner] said, "There's my mom. She's on fire. She's dead" (Tr. 215). As Chuck looked toward Rita's bedroom, he could see just her legs as there was smoke and fire in the room (Tr. 216). He also saw a water hose laying on the floor (Tr. 216).

Detective Curt Davis of the Washington County Sheriffs' Department was called to Rita Politte's residence around 7:00 a.m. on December 5, 1998 (Tr. 449). Sheriff Ronnie Skiles, members of the fire department, and other officers were already at the scene (Tr. 449). Det. Davis had been told that there was a dead body in the house (Tr. 449). As a result, he began to take photographs of the scene (Tr. 449–450). Sheriff Skiles informed Det. Davis that there were two boys, [Petitioner] and his friend, Josh Sansoucie, who had been at the house all night (Tr. 453).

Det. Davis was then told to interview [Petitioner] and Sansoucie to see if either of them "knew anything" (Tr. 454).

Det. Davis talked to [Petitioner], who was sitting in a patrol car (Tr. 453). [Petitioner] was not handcuffed (Tr. 453). Det. Davis identified himself and asked [Petitioner] if he had been there all night and [Petitioner] responded, yes (Tr. 454). Det. Davis then asked appellant what had taken place (Tr. 454). [Petitioner's] statement to Det. Davis was as follows:

> Michael Politte had advised me that he and a friend [Sansoucie] was at his house the evening before, around 10:30 p.m., and that his mom went to bed about 12:30, and he and his friend went to bed about ten minutes later. And the next morning he woke up to the smell of smoke. He turned over and asked his friend if he had been smoking a cigarette. And his friend advised him, no, he had not. So they got up, they see a fire in his mom's bedroom. And so his friend goes running out of the house, yelling, call the fire department. And Michael Politte stated that he couldn't get to the phone. So he ran out of the house and told his friend to turn on the hose. And he drug the hose in to try to put the fire out. And that his friend went up to the neighbor's house to call the fire department. And he stated that he couldn't get the fire out and realized that it was his mom on fire. So he ran up to meet his friend, and he was on his way back from the neighbor's. They met. They came back. They stood outside. And then the next thing they knew, the fire department had shown up...he mentioned that when they went to bed that he had his stereo turned on throughout the night. (Tr. 456–457).

After Detective Davis interviewed [Petitioner] in the patrol car, Det. Davis also interviewed other witnesses (Tr. 459). Because there were inconsistencies between the various statements Det. Davis had taken, Sheriff Ronnie Skiles had Det. Davis transport [Petitioner] and Sansoucie separately to the police station for further questioning as they had changed from being potential witnesses to being suspects in the crime (Tr. 459).

As Det. Davis was transporting [Petitioner] to the station, [Petitioner] became agitated and wanted to know why he had to go with him (Tr. 460). Det. Davis told him that they were conducting an investigation and asked [Petitioner] if he wanted to "catch" who had killed his mother (Tr. 460). On the way, [Petitioner] then asked Det. Davis "who's going to get my mom's truck?" (Tr. 460). Det. Davis responded that it depended on whose name was on the title and no further conversation took place (Tr. 460). They waited for 15 to 20 minutes for a juvenile officer to arrive (Tr. 461).

A juvenile officer arrived at the police station and informed [Petitioner] of his rights in the presence of [Petitioner's] father, and an investigator for the Potosi Fire Marshal, James Holdman (Tr. 249, 301). After each sentence, [Petitioner] initialed and signed the rights form (Tr. 302, State's Exhibit 66). After having been explained his rights, [Petitioner] agreed to talk (Tr. 302). The additional information from this statement was that on the evening before the fire, [Petitioner] and Sansoucie had taken some gas to the railroad tracks and burned a portion of the tracks (Tr. 306). Also, when Holdman asked [Petitioner] why he did not hear a struggle going on in his mother's bedroom, [Petitioner] stated that he had his stereo on loud as he slept (Tr. 308–309).

[Petitioner] then asked Holdman if they could tell his mother's cause of death, and Holdman responded that a pathologist could be able to tell cause of death from an autopsy (Tr. 311–312). [Petitioner] then asked if his father would have to pay for the autopsy (Tr. 314). When Holdman asked [Petitioner] if he had played a part in his mother's murder, [Petitioner] said that if he would have killed his mother, he would have let the fire burn up the blood and the evidence or that he would have taken his mother out to the woods and then let the fire burn up the evidence (Tr. 313–314). [Petitioner] admitted that he had problems with his mother, and stated that he had threatened her in the past (Tr. 318).

[Petitioner's] shoes were seized and an "accelerant sniffing dog" had alerted to the shoes (Tr. 316–317). [Petitioner] stated that he got gas on his shoes the Tuesday before when he was playing with a gas device and had caught his leg on fire burning his leg (Tr. 317).

Det. Davis then interviewed [Petitioner] a second time in the presence of [Petitioner's] father, a juvenile officer and Sheriff Skiles (Tr. 461). [Petitioner] gave a verbal and written statement (Tr. 461, State's Ex. 68). The second statement differed from the first statement with Det. Davis in the patrol car (Tr. 461). [Petitioner] mentioned that they had been smoking marijuana and that when they first ran out of the house, Sansoucie [then] yelled, "call the fire department" (Tr. 462). [Petitioner] stated that he could not reach the phone and had to crawl out of the house (Tr. 467). He also stated that only he and his uncle ran back into the house (Tr. 470).

At one point in the interview, when confronted with other witnesses' statements, [Petitioner] got up in a rage and said, "Come on Dad. Let's get out of here" and that "[t]his is a bunch of shit. They're trying to pin something on me that I didn't do" (Tr. 469).

A couple of days later, on December 7, 1998, [Petitioner] was arrested and taken to the police station (Tr. 472). When the juvenile officer read [Petitioner] his rights, [Petitioner] responded, "Yes. I want a fucking attorney" (Tr. 472–473). They ceased questioning after that (Tr. 473), however [Petitioner] volunteered that the investigators did not know what they were doing and that only chemicals could burn down and not gas (Tr. 473).

An investigation of the fire and murder was conducted by the Washington County Sheriffs' Department, the Potosi Fire Marshal's investigators and from members of the Missouri State Highway Patrol crime lab (Tr. 249, 504, 586, 601). Three gas containers that were sitting along a concrete driveway approximately 30 feet from the home along with two partially melted soda bottles, one containing a wick, were seized from the scene (Tr. 256, 260, 297). Gasoline was found inside the soda bottles (Tr. 642).

There was no fire damage to the southern portion of the trailer, near [Petitioner's] bedroom (Tr. 273). It was determined that [Petitioner's] bedroom door had been closed during the fire (Tr. 273). The fire damage had been contained to the upper portion of Rita Politte's body, near the area where Rita had suffered a fracture to her skull (Tr. 276, 278– 280). A fabric had been placed over Rita's face (Tr. 386). The fire near Rita's body had burned hot enough and fast enough that it went down the carpet and through the floor exposing the "floor joist" and taking out some of the wood

4

flooring (Tr. 279). The fire was declared intentional and not accidental or naturally caused (Tr. 277, 282).

Blood was also discovered in Rita's bedroom (Tr. 283–284). There was blood on her thigh, and blood splatters on the doorway and just inside the door jam on the light switch (Tr. 283–284). Blood ran down the walls meeting up with blood smears (Tr. 284). Based on the fire damage, it was determined that the bleeding had occurred before the fire was set (Tr. 291). Blood on the light switch was consistent with Rita's profile (Tr. 617).

An autopsy revealed that Rita Politte was alive and breathing when the fire started and that she had suffered a "linear V-shape skull fracture" causing a hemorrhage in the back of her brain (Tr. 388). The cause of death was from carbon monoxide poisoning (Tr. 383).

A month after the murder, [Petitioner] spontaneously confessed in the juvenile detention center, after he had tried to commit suicide that, "I haven't cared since December 5. That's when I killed my mom." (Tr. 654, 656, 669).

[Petitioner] did not testify but presented four witnesses to testify on his behalf (Tr. 703–749). At the close of evidence and argument, the jury found [Petitioner] guilty of murder in the second degree (L.F. 2). On April 19, 2002, [Petitioner] was sentenced in accordance with the jury's recommendation to a term of imprisonment to be served in the Missouri Department of Corrections (Tr. 838)

**Procedural History**

Petitioner raised two claims on direct appeal: 1) the trial court erred in admitting his pre-*Miranda* statements, and 2) trial court erred in admitting his post-*Miranda* statements. (ECF No. 21-12, *passim*; 21-14 at 1-2) On October 14, 2003, the Missouri Court of Appeals found both claims to be without merit. *Id*. at 3-6. Petitioner admits that he did not seek post-conviction relief under Missouri Supreme Court Rule 29.15. (ECF No. 1 at 19)

In 2020, Petitioner filed a petition for a writ of habeas corpus in state court. (Cole County Decision) The Circuit Court of Cole County rejected Politte's claims as procedurally barred, and found the defaults were not excused by gateway innocence. (Cole County Decision at 9–12) In the alternative, the Court denied Petitioner's claims as meritless. (Cole County Decision) On August 22, 2021, Petitioner filed claims again in a habeas petition in the Missouri Court of Appeals, Western District, Case No. WD84748, which was denied on September 1, 2021, without

5

explanation. (ECF No. 21-90, 92–97) Petitioner presented the claims again unsuccessfully in a habeas petition to the Missouri Supreme Court. (ECF No. 21-92, 93, 99)

On May 15, 2022, Washington County prosecutor filed a motion to vacate Petitioner's conviction pursuant to 547.031, R.S. Mo. *See* ECF No. 3-1, *State v. Politte*, No. 24R059900043. On November 3, 2022, Petitioner filed a Petition for Writ of Habeas Corpus in this Court. (ECF No. 1) On November 17, 2022, this Court granted a Motion to Stay and Abey to allow the state court to resolve the issue presented in the motion to vacate. (ECF No. 17) Ultimately, the Missouri Supreme Court granted a writ of prohibition, finding that "section 547.031 does not authorize the Washington County prosecuting attorney to file a motion to vacate or set aside Mr. Politte's conviction" because Petitioner was convicted in St. Francois County. (ECF No. 18-1 at 4) The Missouri Supreme Court ordered the circuit court to take no further action in that matter other than to dismiss the Washington County prosecuting attorney's motion to vacate or set aside Petitioner's conviction. (ECF No. 18-1) This matter is now fully briefed and ready for disposition.

## II.    STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2254, a district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "[I]n a § 2254 habeas corpus proceeding, a federal court's review of alleged due process violations stemming from a state court conviction is narrow." *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995).

Federal courts may not grant habeas relief on a claim that has been decided on the merits in state court unless that adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). "A state court's decision is contrary to . . . clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision . . . and nevertheless arrives at a [different] result." *Cagle v. Norris*, 474 F.3d 1090, 1095 (8th Cir. 2007) (quoting *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003)). A state court "unreasonably applies" federal law when it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000). A state court decision may be considered an unreasonable determination "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Ryan v. Clarke*, 387 F.3d 785, 790-91 (8th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)).

A state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1); *Wood v. Allen*, 558 U.S. 290, 293 (2010). Review under § 2254(d)(1) is limited to the record before the State court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011). Clear and convincing evidence that state court factual findings lack evidentiary support is required to grant habeas relief. 28 U.S.C. § 2254(e)(1); *Wood*, 558 U.S. at 293.

## III.  DISCUSSION

### A.  Procedural Default

Under the doctrine of procedural default, "a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). "A federal habeas court generally may consider a state prisoner's federal claim only if he has first presented that claim to the state court in accordance with state procedures." *Shinn v. Ramirez*, 596 U.S. 366, 371 (2022); *Franklin v. Hawley*, 879 F.3d 307, 311 (8th Cir. 2018) (citing *Murphy v. King*, 652 F.3d 845, 849 (8th Cir. 2011)) ("A procedural default occurs when a prisoner violates a state procedural rule and this violation serves as an independent and adequate state-law basis to uphold the state courts' dismissal of a claim, thereby precluding consideration of federal claims on direct appeal."); 28 U.S.C. §2254(e)(2). When the prisoner has failed to do so, and the state court would dismiss the claim on that basis, the claim is "procedurally defaulted." *Shinn*, 596 U.S. at 371. "To overcome procedural default, the prisoner must demonstrate 'cause' to excuse the procedural defect and 'actual prejudice' if the federal court were to decline to hear his claim." *Id*. (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)); *Franklin*, 879 F.3d at 311.

Here, the Missouri Court of Appeals issued an opinion affirming the judgment of conviction and sentence on October 14, 2003. (ECF No. 21-100) Petitioner filed a motion for rehearing or transfer, which was denied by the Missouri Court of Appeals on December 10, 2003. *Id*. Petitioner failed to file a motion for discretionary transfer in the Missouri Supreme Court. *Id*. Consequently, direct review was completed fifteen days later, on the first business day after December 25, 2003, when the discretionary transfer motion was due. Petitioner admits that he did not file a Rule 29.15 post-conviction relief motion. (ECF No. 1 at 19)

Petitioner filed his initial state habeas corpus petitioner in Cole County on March 6, 2020, more than sixteen years after the completion of direct review. (ECF No. 21-101) The Cole County

habeas petition presented essentially the same claims Petitioner now brings attacking the fire science as "false and misleading." *Id*. at 35-51. Likewise, Petitioner contended that trial counsel was ineffective for not attacking the fire evidence at trial as "false and misleading," as he also does in this case. *Id*. at 58-72. The scientific reports upon which the state and federal habeas petitions rely were prepared in 2015 and 2016, years before Petitioner used them in support of his 2020 state habeas petition or this petition. (ECF Nos. 21-15, 21-16, 21-17) Petitioner now contends that the factual basis of the fire science was not available until November 2020, when a letter from the Highway Patrol Criminalist Supervisor was filed as part of the 2020 Cole County habeas petition. (ECF No. 1 at 4-7)

The record, however, contradicts this. Petitioner had expert reports supporting his fire science claims years before he chose to use them in a state habeas corpus action. Counsel for Petitioner stated in an interview: "We've had this for years this key scientific evidence, but we wanted to do the legwork to gather all of the other pieces of evidence we possibly could before he went into court." (ECF No. 21-102 at 13 (interview of Megan Crane)) Politte raised the claims in the Cole County petition supported by those 2015 and 2016 reports (ECF Nos. 21-15 (Lentini Report, dated 8/9/2016); 21-16 (Bieber Declaration, 9/13/2015), 21-17 (Bieber Report (undated)) before the letter he asserts provided the factual basis of his claims was filed as an exhibit in response to his claims during the litigation of the Cole County habeas petition.

Petitioner also argues that the untimeliness of his habeas petition should be excused based upon his actual innocence. (ECF No. 1 at 5) The Circuit Court of Cole County, however, addressed Petitioner's actual innocence claim and found that his petition did not contain any new evidence. (Cole County Decision at 20-24) The Cole County Circuit Court emphasized that Petitioner confessed the murder to three people and told a psychologist that he had set other fires during the

previous year. *Id.* at 22. The Cole County Circuit Court further found these claims were procedurally barred and without legal merit:

> The prosecutor did not present false and misleading testimony by putting on expert testimony that Petitioner now attacks with new opinion testimony, which argues for different conclusions. Petitioner's current expert agrees with the State's expert that the fire originated on the victim's upper body. And Petitioner admitted that he had gasoline on his shoes when he gave the shoes to the police. The fire investigator who testified at trial indicated that although his dog could detect fewer parts per thousand of a petroleum product than a gas chromatograph, the dog unlike a gas chromatograph could not … tell what type of petroleum based product was present. What the State presented was a dog alert on the shoes confirmed by a gas chromatograph finding gasoline on the shoes, as interpreted by the analyst at the time. Petitioner now alleges that the alkanes indicating gasoline, found by the gas chromatograph, were really "noise" and that therefore the dog alert on the shoes should have been considered unconfirmed. The crux of this argument is that Petitioner's current expert disagrees with the State's interpretation of the gas chromatograph results. This is not evidence of the use of false or misleading testimony. Petitioner's current expert also opines that it would be better practice to call the cause of the fire undetermined because an accelerant was not found in the fire debris even though it admittedly started on the victim's upper body. Again this is not evidence of the use of false or misleading testimony. It is the post-trial presentation of opinion evidence, not evidence of knowing use of perjured testimony. *See McKim v. Cassady*, 457 S.W.3d 831, 843-52 (Mo. App. W.D. 2015) (rejecting claim based on presentation of expert after trial who disagreed with defense expert and discussing cases in other jurisdictions rejecting such claims); *Napue v. Illinois*, 360 U.S. 264 (1959) (noting that a constitutional violation results from knowing use of perjured testimony); *Gigilo v. United States*, 405 U.S. 150 (1972) (false testimony that witness had not received a deal for his testimony required reversal only if created reasonable probability the outcome of the proceedings was changed). Here, there was no knowing use of false testimony.
>
> Petitioner admitted he had gasoline on his shoes, and spontaneously confessed to the murder. There is no disagreement that the fire started on the victim's upper body. There is no plausible argument to be made that the fire was accidental. There was no finding of accidental cause. The victim did not spontaneously combust after an attacker fractured her skull with a blunt instrument, and covered her face with a material that burned into it. The burn pattern is the same as a fire that Politte admittedly set with gasoline on nearby railroad tracks before the killing. The claim is without merit as well as procedurally barred. *See* NFPA 921 Guide for Fire and Explosion Investigations 12-6 ("Ultimately, the decision as to the level of confidence of data collected in the investigation or any hypothesis drawn from the analysis of the data lies with the investigator."). *See e.g. State ex rel. Barton v. Stange*, 597 S.W.3d 661, 664 (Mo. 2020 (presentation of competing blood spatter evidence did not show the petitioner was innocent and claim original

testimony should have been excluded was frivolous citing *State v. Barton*, 240 S.W.3d 693, 704-05 (2014)). An evidentiary hearing could not change either of these conclusions. The claim fails on undisputed material facts.

(ECF No. 21-89 at 26-28) Agreeing with the sound reasoning of the Cole County Circuit Court, this Court finds no basis for Petitioner's actual innocence claim. The decision was supported by confession and physical evidence that remains unchallenged today.

Petitioner further argues that he is entitled to equitable tolling because he pursued his claims with reasonable diligence and the state suppressed evidence. (ECF No. 1 at 11) He contends that equitable tolling ended months after he filed his state habeas petition in March 2020, when the respondent in that case filed the letter from Highway Patrol Criminalist Michael Baker in response to the Petition in November 2020. *Id.*[2] In the November 6, 2020 letter, Criminalist Baker reported that that he would not now find gasoline on Petitioner's shoes based on the absence of alkanes in the chromatograph results, but that at the time of the analysis the "analyst would not have known that alkanes were also necessary to confirm the presence of gasoline." (ECF No. 21-86) The Court notes that Petitioner had the factual basis of this claim based upon scientific reports authored in 2015 and 2016 (ECF No. 21-15, 21-16, 21-17), yet he did not file his federal habeas petition until November 2022. The statute of limitations ran out long before Petitioner filed his state habeas petition in 2020, years after he possessed the reports that purportedly support the claim in the petition. Indeed, Petitioner could have filed this petition in 2016 (or earlier) based upon these scientific reports, even ignoring the fact that his current attack is based upon fire science that was available at trial.

---

[2] On November 16, 2022, the Missouri Attorney General filed a letter from Missouri State Highway Patrol (MSHP) Crime Lab criminalist Michael J. Baker as an exhibit to a pleading in Cole County Circuit Court.

The Court holds that there is no basis for equitable tolling because Petitioner has not shown diligence or any extraordinary circumstances beyond his control that made it impossible for him to file his federal habeas petition. "Equitable tolling is proper only when extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time. Further, equitable tolling may be appropriate when conduct of the defendant has lulled the plaintiff into inaction." *Kreutzer v. Bowersox,* 231 F.3d 460, 463 (8th Cir. 2000) (citations omitted). Petitioner has not shown diligence because he could have filed this petition in 2016 (or earlier) when scientific reports were available and because Respondent did not lull Petitioner into not filing an appeal or habeas petition. Thus, the Court finds that Petitioner's current habeas petition was untimely and must be denied. Out of an abundance of caution, the Court, however, addresses each claim on the merits.

### B.    Claims I and II

In Claim I, Petitioner argues that the State violated due process when it presented "false and misleading" testimony about accelerants on his shoes and about the cause of the fire, which led the State to obtain tainted confession. (ECF No. 1 at 35-50 (citing *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Giglio v. United States*, 405 U.S. 150 (1972)) Petitioner contends that the State presented testimony from multiple expert witnesses that there was gasoline on his shoes and the fire was ignited with gasoline, both of which the State either knew or should have known was false in violation of his Fourteenth Amendment right to due process. Specifically, Fire Marshal Bob Jacobsen and MSHP Crime Laboratory Criminalist Carl Rothove testified that Petitioner had gasoline on his shoes, and Fire Marshall Holdman testified that the fire was intentionally set using an accelerant. Even though it was not presented to the Missouri court below in a Rule 29.15 motion, Petitioner asserts that this Court may reach his *Brady* and *Napue* claims and grant relief because

Petitioner can both demonstrate cause and prejudice, as well as his actual innocence. (ECF No. 1 at 41)

In Claim II, Petitioner contends that his conviction violates his due process rights because it was "based entirely on false scientific testimony that there was gasoline on his shoes and unreliable expert testimony that the fire was ignited with gasoline." (ECF No. 1 at 43) Petitioner references a November 6, 2020 letter from Michael J. Baker, Criminalist Supervisor for the Crime Laboratory Division for the Missouri State Highway Patrol, which Petitioner claims casts doubt on the conclusion that his shoes had gasoline present: "Under the current MSHP Crime Laboratory ignitable liquids procedure, the presence of alkanes is required to render a positive conclusion; alkanes were not identified during the case record review. In absence of this information, I would report this case as no ignitable liquids were identified on the shoes." (ECF No. 3-3) Petitioner argues that the false gasoline testimony was prejudicial because it was the only physical evidence that tied Petitioner to the crime and because it went unrebutted by the defense as there was no contravening defense expert. (ECF No. 1 at 46) Petitioner asserts that, absent the physical evidence to support his conviction, all that remains is "speculative, biased evidence." (ECF No. 1 at 49)

Claims I and II are procedurally barred and the state court's rejection of those claims is entitled to deference under 28 U.S.C. § 2254. Claim II is *Teague* barred because the theory that a change in scientific interpretation, or a competing scientific interpretation, after trial can result in a due process violation, without knowing use of perjured testimony, was not dictated by precedent at the time the case was on direct appeal. *See Edwards v. Vannoy*, 593 U.S. 255, 265 (2021) (A rule is new unless it was "*dictated* by precedent existing at the time the defendant's conviction became final." *Teague*, 489 U.S. at 301 (plurality opinion). In other words, a rule is new unless, at the time the conviction became final, the rule was already "apparent to all reasonable jurists."

13

*Lambrix v. Singletary*, 520 U.S. 518, 528 (1997)). Indeed, the rule suggested by Petitioner is not dictated even now. *See Rhodes v. Smith*, 950 F.3d 1032, 1037, n.2 (8th Cir. 2020) (declining to determine if such a claim exists: "Like the district court, we assume for purposes of the argument, but do not decide these claims are constitutional violations.").

Likewise, the Court also finds these claims are without legal merit. The evidence presented was not false or misleading. As noted by the Circuit Court of Cole County,

> Petitioner admitted he had gasoline on his shoes, and spontaneously confessed to the murder. There was no disagreement that the fire started on the victim's upper body. There is no plausible argument to be made that the fire was accidental. There was no finding of a possible accidental cause. The victim did not spontaneously combust after an attacker fractured her skull with a blunt instrument, and covered her face with a material that burned into it. The burn pattern is the same as a fire that [Petitioner] admittedly set with gasoline on nearly railroad tracks before the killing. The claim is without merit as well as procedurally barred. *See* NFPA 921 Guide for Fire and Explosion Investigation 12-6 ("Ultimately, the decision as to the level of confidence of the data collected in the investigation or any hypothesis drawn from the analysis of the data lies with the investigator."). *See, e.g.*, *State ex rel. Barton v. Stange*, 597 S.W.3d 661, 664 (Mo. 2020) (presentation of competing blood spatter evidence did not show the petitioner was innocent and claim original testimony should have been excluded was frivolous citing *State v. Barton*, 240 S.W.3d 693, 704-05 (2014)). An evidentiary hearing could not change either of these conclusions. The claim fails based upon undisputed material facts.

(Cole County Decision at 27-28) The Court finds that the state court decision was not contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor was an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Petitioner admitted the presence of gasoline on his shoes and the scientific reports do not negate that possibility. Petitioner has not shown that false testimony was presented and thus has not shown an unreasonable application of federal law. The Court denies habeas relief on Claims I and II because they are procedurally barred and fail on the merits.

14

### III.    Claim III

Petitioner argues that the prosecution's closing arguments misrepresented the evidence, thereby violating his due process rights. (ECF No. 1 at 50) Specifically, Petitioner asserts that the prosecutor took a "dramatic leap" in closing arguments when he told the jury that Petitioner poured gasoline on his mother's face and lit her on fire. (ECF No. 1 at 50) While arguing *mens rea* to the jury, the prosecutor asserted: "[C]ooly [sic] reflecting is going outside and grabbing those empty gas cans . . ., putting something her face, dousing it with . . . gasoline, and setting her on fire. . . . That's clearly deliberation." (ECF No. 1 at 50 (citing T. 764))

This claim was not raised on direct appeal and, therefore, is procedurally barred. Petitioner also did not raise this claim in his state habeas petition in Cole County. *See* Cole County Decision. Politte presented this claim in his petition to the Missouri Supreme Court (ECF No. 21-99 at 19-20), but the Missouri Supreme Court denied the petition. (ECF No. 21-92)

As to the merits, Petitioner complains that the prosecutor stated at trial that Petitioner put something on his mother's face, poured gasoline on it and lit it, setting her fire. (ECF No. 1 at 50) On habeas review, the Cole County court found this was a reasonable inference. The prosecutor stated that "[a] fabric had been placed over Rita's face (Tr. 386)." (ECF No. 21-89 at 8) Trial counsel did not object when the prosecutor referenced Petitioner placing something on his mother's face. *See* ECF No. 21-5 at 42. Likewise, the jury was instructed that attorney arguments are not evidence. (ECF No. 21-11 at 5 (Instruction No. 12)) The jurors are presumed to follow the instruction given by the trial court. *State v. Garrison*, 292 S.W.3d 555, 560–61 (Mo. Ct. App. 2009); *State v. Wheeler,* 219 S.W.3d 811, 816 (Mo .App. 2007); *State v. Davis,* 122 S.W.3d 690, 693 (Mo. App. 2003). *See* ECF No. 21-13 at 11-12; ECF No. 21-89 at 8.

The Court finds that, contrary to Petitioner's argument, the trial court was not obligated under the due process clause to interfere with an argument that the defense counsel at trial did not find objectionable. *See Carter v. Armontrout*, 929 F.2d 1294, 1297, n.2 (8th Cir. 1991) (citing *Willis v. Kemp*, 838 F.2d 1510 (11th Cir.1988))(No due process claim arises when the defendant's counsel, as a matter of reasonable trial strategy, decides not to object to prosecutorial misconduct. "In such a situation, if the trial court sua sponte granted a mistrial, the defendant's right to proceed to verdict once jeopardy had attached would be violated. Further, the sua sponte issuance of a curative instruction could interfere with the defendant's trial strategy."). The Court holds that the prosecutor's argument was not improper and the trial court did not violate Petitioner's due process rights by failing to insert itself into the argument when the defense did not object. This claims is without merit as well as procedurally barred. The Court defers to the decision of the Missouri state court, finds no unreasonable application of clearly established Federal law and denies this claim.

### IV.    Claim IV

In Claim IV, Petitioner asserts that his Fourteenth Amendment right to due process was violated when police intimidated Joshua Sansoucie, Petitioner's friend and the only other person present on the night of Rita's death, from testifying on Petitioner's behalf. (ECF No. 1 at 55) Petitioner contends that Sansoucie provided police with an account of the evening similar to that provided by Petitioner. *Id*. Petitioner further argues that law enforcement continually approached Sansoucie, using various coercive techniques, to try to get him to flip on Petitioner but he never did. (ECF No. 1 at 55-56) Petitioner contends that Sansoucie ultimately was coerced into not testifying on Petitioner's behalf. (ECF No. 1 at 58)

The Circuit Court of Cole County found that this Claim IV has been defaulted procedurally and was without merit:

Potential witness [Joshua] Sansoucie's affidavit, presented by Petitioner, in this case says that Sansoucie was in the hall outside the courtroom ready to testify, but defense counsel did not call him, and thus refutes the allegation that the police intimidated him into not testifying. In the affidavit, Sansoucie says he wakened in the night to hear a popping noise and could not see whether Petitioner was in his bed. But he also says that he watched footage of himself saying that "Bernie [Petitioner Michael Politte] was not in his bed when I woke up in the middle of the night", as opposed to his not being able to see if he was in bed, and that he never would have believed he said that had he not seen it on film because his current memory is that he has been saying the same thing all along. The affidavit refutes the claim that the prosecution intimidated Sansoucie into not testifying. In addition, Sansoucie's testimony would have been unhelpful to the defense, and at worst would have been damaging to the defense, if he had said that Petitioner was not in his room at the time he heard a noise in the night, as opposed to saying he could not tell. The claim as well as being procedurally barred is refuted by Petitioner's own exhibit. And this cannot be changed by an evidentiary hearing. The claim is refuted by undisputed material evidence.

(Cole County Decision at 28-89)

The Court holds that this claim is procedurally barred and the rejection of that state court claim is entitled to deference under 28 U.S.C. §2254. Based upon Sansoucie's affidavit presented in the state court, Petitioner has not identified any potentially exculpatory testimony that Sansoucie would have provided and, therefore, no due process violation. The Court defers to the well-reasoned decision of the Missouri state court, finds no unreasonable application of clearly established Federal law and denies this claim.

## V.     Claim V

Petitioner asserts that his right to due process under the Sixth and Fourteenth Amendments was violated when the trial judge interfered with the jury's deliberations. (ECF No. 1 at 64) Petitioner alleged in his habeas petition to the Circuit Court of Cole County that the trial judge summoned an individual hold-out juror from deliberations and spoke to him privately about the case. Petitioner argues that, but for this conversation with the trial judge, the hold-out juror would

have continued to dissent from the other jury members and Petitioner's trial may have resulted in

a hung jury or acquittal. (ECF No. 1 at 68)

The Circuit Court of Cole County found that this claim was procedurally barred and

without legal merit:

> In claim [V] of the current [state court] petition Petitioner alleges the trial court violated due process by improperly interfering with the jury's decision making. Petitioner alleges that the trial judge called a hold-out juror, Mr. Peterson, out of the jury room and spoke to him privately in chambers. Petitioner further alleges that the judge told the juror that he had to make up his mind and come to a decision and that this convinced the juror to vote with the rest of the jury. Amended Habeas Petition at 109-114.
>
> In an interview with an investigator for the Office of the Attorney General, Juror Peterson indicated that before he spoke with the judge, he believed that Petitioner was guilty and needed to go to jail, but he did not believe Petitioner acted alone, and that he thought it was unjust to convict only Petitioner. Juror Peterson also told the investigator that he also met with the judge after the trial was over. In interviews with an investigator from the Office of the Attorney General, Judge Pratte and Marshals Horn and Francis indicated that Judge Pratte did not call Juror Peterson into chambers during deliberations, and that he had never done anything like that in any case. In his interview with an Attorney General's Office investigator, Juror Peterson referred to being "pretty sure" and "almost one hundred percent positive" that he met with the judge during deliberations as well as after trial, before saying "I'm sure" and "it's been a long time." It is most likely that Juror Peterson remembers his meetings with the judge after trial as being a meeting during deliberations, and a meeting after trial. Judge Pratte was adamant that the alleged meeting with Juror Peterson during deliberations did not happen, it would have been inappropriate, and he would not have done it. It is highly unlikely that the judge and the two marshals all misremember the events. Judges are presumed to know and follow the law. *Worthington v. State,* 166 S.W.3d 566, 573 (Mo. 2005). There is nothing here that overcomes the presumption, even if Peterson were to testify as Petitioner alleges.
>
> But in any event the claim is procedurally barred. And [Petitioner] cannot show cause and actual prejudice or gateway actual innocence to excuse the default. So, any dispute in recollections on this point is not material to the outcome of the case.

(Cole County Decision at 37-38)

Claim V is procedurally barred and the state court's rejection of this claim on the merits is

entitled to deference under 28 U.S.C. § 2254. It is not for this Court to second guess the credibility

determination of the state court which found the judge and court personnel believable. *See Smulls v. Roper*, 535 F.3d 853, 864 (8th Cir. 2008) (citing *Rice v. Collins,* 546 U.S. 333, 338-39 (2006)) ("The deference owed to the state trial court pursuant to § 2254(e)(1) includes deference to its credibility determinations. A federal court can only grant habeas relief if the state court's credibility determinations were objectively unreasonable based on the record."). The Court holds that the state court's factual determination was not unreasonable and did not produce a result contrary to federal law.

## VI.    Claim VI

In Claim VI, Petitioner maintains that his Fifth and Sixth Amendment rights were violated by the admission at trial of his custodial statements to law enforcement because he was not provided his *Miranda*[3] rights even though he was in custody. (ECF No. 1 at 69) Petitioner notes that the Washington County Prosecuting Attorney now agrees that Petitioner was in custody at the time of these statements and that their admission at trial violated his constitutional rights. *Id*. Petitioner admits that the statements at issue "were not a confession or admission" but nevertheless asserts that the state used these statements against Petitioner at trial. *Id*.

Petitioner challenged the admission of his statements to police on direct appeal. *See* ECF No. 21-14 at 6, ED81197. The Court of Appeals found that Petitioner was not in custody when he answered the initial, investigatory questions at the crime scene. (ECF No. 21-14 at 6) Rather, when suspicion focused on him and he was placed in custody and taken to the police station, he was *Mirandized* before further questioning. *Id*. The state court's rejection of this claim on the merits is entitled to deference under 28 U.S.C. § 2254. *See* ECF No. 21-14. The Court does not second guess that state court determination that the detective's interview with Petitioner, the first person he

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

interviewed at the scene as part of information gathering, was not a custodial interview. This decision is consistent with a reasonable determination of the facts and application of *Miranda v. Arizona*, 384 U.S. 436 (1966). The Court denies relief on Claim VI.

**VII.   Claim VII**

In Claim VII, Petitioner argues that his right to due process was violated because he was certified to be tried as an adult partially based on evidence that was "meaningless and/or false." (ECF No. 1 at 69) Petitioner contends that the presentation of a bloody tire iron at the juvenile adjudication proceeding was improper prior to testing the tire iron for DNA. (ECF No. 1 at 69-70) Petitioner asserts that "[h]ad the judge known the tire iron was not the murder weapon—and [did] not tie [Petitioner] to the crime—[Petitioner] may not have been certified as an adult." (ECF No. 1 at 70) Further, he contends that "[i]f [Petitioner] had not been adjudicated as a juvenile, he inevitably would have had a better result." *Id*. That is, if he had been convicted in juvenile court, then he would have only lost a handful of years, rather than 23 years. *Id*.

Petitioner admits this claim was not previously presented throughout the state courts. (ECF No. 1 at 70) Petitioner, however, argues that his actual innocence overcomes his procedural default. *Id*. As previously discussed, the Court defers to the state court finding that Petitioner has not demonstrated actual innocence. Therefore, Claim VII is procedurally defaulted. In addition, the claim is also without merit.

The Court finds no basis in law for Petitioner's argument. Petitioner critiques the use of non-DNA tested evidence during the juvenile certification process. However, the nine-factor judicial certification process is different than the admission of evidence at trial. *See* Mo. Rev. Stat. 211.071; *State v. Nathan*, 404 S.W.3d 253, 259 (Mo. 2013) ("The plain language of these sections demonstrates that the focus in a certification proceeding is on the juvenile, not the conduct alleged

in the petition."). That is, "[a] petition pursuant to sections 211.031.1(3) and 211.091 serves only to invoke the juvenile court's exclusive jurisdiction by identifying the individual as being younger than 17 years old and alleging that the child has engaged in conduct that would be a crime if committed by an adult." *Nathan*, 404 S.W.3d at 259. Thus, given that the focus in a certification proceeding is on the characteristics of the child and does not focus on the guilt of the underlying offense, the Court finds no basis for habeas relief simply because an item was not DNA tested prior to the adult certification petition. Petitioner has not identified any federal statute, law, or constitutional violation other than a nebulous due process claim, which is not borne out in the facts. Therefore, the Court denies Claim VII.

### VIII. Claim VIII for ineffective assistance of counsel claim

#### A. Ineffective Assistance of Counsel under *Strickland*

To succeed in bringing an ineffective-assistance claim in the first instance, a petitioner must show "both (1) that counsel's representation fell below an objective standard of reasonableness in light of prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Springs v. Payne*, 95 F.4th 596, 601 (8th Cir. 2024) (citing *Strickland*, 466 U.S. at 687-88, 694 (internal quotations omitted).

Between *Strickland* and § 2254, the court's review of the denial of a § 2254 petition based on ineffective assistance is "doubly deferential." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). "If this standard is difficult to meet—and it is—that is because it was meant to be." *Burt v. Titlow*, 571 U.S. 12, 20 (2013) (internal quotation marks omitted). "We will not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Id.*

21

*Strickland* prejudice exists when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Dorsey v. Vandergriff*, 30 F.4th 752, 757 (8th Cir. 2022). This prejudice standard requires a "substantial, not just conceivable" likelihood of a different result. *Harrington v. Richter*, 562 U.S. 86, 112 (2011). "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" *Id.* at 111-12. The Court assesses "whether there is a substantial likelihood of a different result by reweighing the aggravating evidence against the totality of available mitigating evidence." *Springs*, 95 F.4th 596, 601–02 (citing *Wiggins v. Smith*, 539 U.S. 510, 534 (2003)).

### 1. Trial counsel was not ineffective for failing to present expert testimony about the accelerant and arson evidence (Claim VIII, Point A, Argument 1)

Petitioner argues that defense counsel was ineffective for not investigating, developing, or presenting a defense to the State's accelerant and arson evidence against Petitioner. (ECF No. 1 at 74) Petitioner asserts that "[a]rson and accelerant (gasoline) testimony was central to the State's case against [Petitioner] … [b]ut defense counsel did essentially nothing to investigate, develop, or present a defense to this State trial theory and key evidence, despite the fact that a compelling defense was readily available given that the evidence was in fact false." (ECF No. 1 at 74) Petitioner contends that the State's strongest evidence against him was the gasoline and fire science evidence, which was "extremely weak." (ECF No. 1 at 75-76) Petitioner emphasizes that this case involved little other than gasoline on Petitioner's shoes; his counsel had no knowledge of arson cases; he did minimal or no investigation of the fire evidence and underlying science; and he was inexperienced trying homicide cases. (ECF No. 1 at 76) Petitioner argues that trial counsel should

have had an expert perform an independent analysis of the State's forensic evidence but instead "accepted the State's unreliable conclusions, overlooked the fact that laboratory testing of samples from the scene did not show gasoline, or any accelerant, and at bottom, failed to meaningfully perform their adversarial function." (ECF No. 1 at 77) Petitioner further asserts that his counsel relied solely upon his cross-examination of the State's expert witnesses, rather than securing his own experts who could test the gasoline evidence. (ECF No. 1 at 78)

On habeas review, the Circuit Court of Cole County found that counsel was not ineffective:

> Counsel made reasonable strategic decisions and Petitioner was not prejudiced. Under the *Strickland* test, Petitioner would have to show that counsel's actions were outside the wide range of professional competence, and that but for the alleged incompetence there is a reasonable probability the outcome of the proceeding would have been different. The evidence in this case was overwhelming, even without Petitioner's spontaneous confession in the context of a suicide attempt that he had killed his mother. Counsel did the best he could under the circumstances. There is no reasonable probability the outcome would have been different had he tried the case differently. Petitioner alleges trial counsel was ineffective for several reasons. All are without merit.

**• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •**

> There was no "false fire evidence" here to challenge. Petitioner's own expert admits the fire started on the victim's upper body in the area where her skull had been fractured by blunt trauma. Petitioner admitted to the police that there was gasoline on his shoes from a fire that he started earlier, and that he set his leg on fire in the process. He admittedly started still another fire with gasoline on the railroad tracks the evening before the murder. Petitioner's expert claims that the State's expert mistakenly identified "noise" as alkanes in the gas chromatograph result, supporting the conclusion of the presence of gasoline, and that therefore the accelerant dog sniff of the shoes was unconfirmed. Petitioner's expert also claims that it was bad practice to conclude that an accelerant was used from burn patterns, without a chemical test showing the presence of an accelerant.
>
> Any attack on the presence of gasoline on Petitioner's shoes would have been unconvincing in light of Petitioner's admission that there was gasoline on his shoes. Similarly, any attempt to argue the fire was anything but deliberately set would have been pointless. There was no evidence of any natural or accidental cause of the fire. And the downward burn pattern of the fire was the same burn pattern of the gasoline fire that Petitioner admittedly set on nearby railroad tracks before the murder.

Counsel acted competently and there was no prejudice. The claim fails under *Strickland v. Washington*, 466 U.S. 668 (1984) as well as being procedurally barred. No evidentiary hearing could change that.

(Cole County Decision at 29-30) The Court holds that the Cole County Circuit Court reasonably applied *Strickland*. The state court determination that trial counsel's performance was competent is entitled to deference, particularly in light of Petitioner's admission that he had gasoline on his shoes and the evidence that the fire was set with an accelerant. Petitioner has not shown that trial counsel's performance was prejudicial to this case in light of Petitioner's confession. Claim VIII, Point A, Argument 1 fails.

## 2. Trial counsel was not ineffective for failing to present evidence about Petitioner's relationship with his mother (Claim VIII, Point A, Argument 2)

Petitioner states that trial counsel was ineffective for failing to investigate and present evidence rebutting the State's weak and false theory regarding his motive to kill his mother. (ECF No. 1 at 81) Notably, Petitioner argues that, if counsel had interviewed Derek Politte, he would have learned that Derek thought Petitioner was a good kid and was not threatening his mother. (ECF No. 1 at 81) Likewise, Petitioner maintains other family and friends—Chrystal Politte, Melonie Politte, Melinda Glore, Michael Glore, Joshua Poucher, and Tammy Nash—would have testified regarding Petitioner's close relationship with his mother. Petitioner asserts trial counsel also should have investigated and presented evidence that Petitioner was not violent. (ECF No. 1 at 83)

The Circuit Court of Cole Couty addressed this argument in its decision on Petitioner's state habeas petition:

The claim that counsel should have presented evidence of a loving relationship between Petitioner and his mother, and that counsel was ineffective for

not doing so, is procedurally barred and without merit. Petitioner, according to his current expert, was institutionalized for previously threatening to kill his mother. According to an interview with a coworker of the victim, the victim was afraid to go home because of threats by her son, Petitioner, because he had physically assaulted her by hitting her. Further the interview indicated that the victim wanted her son to live with her brother because she could not handle him, she wanted him to stay in a psychiatric center as long as possible because she was afraid of him, her son had told her that he would "burn the trailer down around her", and one week prior to her death he had caught the yard on fire. The coworker also stated the victim told her that Petitioner wanted a car and his father told her that if he did not have to pay child support he could have one. *Id.* And she said that when Petitioner returned from visiting his father in St. Louis he told his mother that if she wasn't around he could have a car. *Id.* That would have confirmed the testimony of Mr. Holdman that Petitioner had told him that he had threatened his mother on a few occasions. T Tr. 318.

There was no real evidence of a loving relationship to put on from people who had actual knowledge of what was going on in the home. Attempting to put on such evidence would have opened the door to evidence of Petitioner's past threats against his mother, including threats to kill her. "Generally the selection of witnesses and the introduction of evidence are questions of trial strategy and virtually unchallengeable." *State v. Kenley*, 925 S.W. 2d 250, 266 (Mo. 1997). Counsel acted reasonably, and there was no prejudice. The claim is without legal merit as well as procedurally barred, and no evidentiary hearing can change that.

(ECF No. 21-89 at 32-33)

The Court agrees that trial counsel's strategic decision not to present testimony regarding Petitioner's relationship with his mother is not deficient performance after federal habeas review. *See Worthington v. Roper*, 631 F.3d 487, 500 (8th Cir. 2011) ("Ordinarily, we consider strategic decisions to be virtually unchallengeable unless they are based on deficient investigation."). "'Decisions relating to witness selection are normally left to counsel's judgment, and this judgment will not be second-guessed by hindsight.'" *Hanes v. Dormire,* 240 F.3d 694, 698 (8th Cir.2001) (quoting *Williams v. Armontrout,* 912 F.2d 924, 934 (8th Cir.1990) (en banc)). If defense counsel presented testimony regarding Petitioner's supposedly loving relationship with his mother, then it would certainly have opened the door to the prosecution presenting testimony that he had repeatedly threatened his mother, as well as his motive for killing his mother. *See Forrest v. Steele*,

764 F.3d 848, 859 (8th Cir. 2014) (Here, the record shows, and the state circuit court found, defense counsel's decision was a strategic one, based on justifiable concerns about the helpfulness (and potential harmfulness) of Dr. Cunningham's testimony. Defense counsel's decision based on this risk calculation does not fall outside the bounds of *Strickland*.") The Court finds that Petitioner has not overcome the strong presumption that counsel acted reasonably or that the result would have been different but for this decision. Claim VIII, Point A, Argument 2 fails.

### 3. Trial counsel was not ineffective for failing to challenge Prosecutor's claim that Petitioner was a "firebug" (Claim VIII, Point A, Argument 3)

Petitioner argues that his counsel was ineffective because he did not oppose the characterization of Petitioner as a "firebug," which was presented through the testimony of Fire Marshal Holdman. (ECF No. 1 at 84) Petitioner contends that the testimony made it appear that he played with fire more than normal children and that his trial counsel was ineffective for not presenting any evidence that such behavior was typical of teens in the country. (*Id.*)

Petitioner did not present this claim in state court in the ordinary course of review, and it is procedurally barred. He presented it as part of his Petition to Missouri Supreme Court (ECF No. 21-99, ¶ 104), which was denied. (ECF No. 21-92)

As to the merits, the Court finds no ineffective assistance of counsel under *Strickland*. Rather, trial counsel made a strategic decision not to introduce any testimony disputing that Petitioner was a "firebug" because he was aware that it would have opened the door to otherwise excluded evidence regarding Petitioner's fire-starting propensities. *See Williams v. Roper*, 695 F.3d 825, 838 (8th Cir. 2012) (Court found no deficient performance under *Strickland* where "[n]ew testimony from a psychiatrist would have opened the door to rebuttal testimony, and new evidence of the defendant's dysfunctional family—serious substance abuse, mental illness, and

26

criminality—might have caused the jury to conclude that the defendant was beyond rehabilitation."). That is, the trial court had excluded evidence that Petitioner admitted setting a garage on fire, and that the fire ignited the woods and burned into another county. Trial Transcript, ECF No. 21-1 at 14-16. Further, Petitioner self-identified as a "firebug" when mocking a fire investigator's lack of knowledge about what caused the fire on his mother to burn downward. Trial Transcript, ECF No. 21-1 at 161. The Court finds no deficiency under *Strickland* in counsel's performance because he did not make the implausible and risky argument that Petitioner's fire proclivities were normal. Finally, the Court defers to the decision of the Missouri Supreme Court. (ECF No. 21-92) The Court finds no basis for relief under Claim VIII, Point A, Argument 5.

### 4. Trial counsel was not ineffective for failing to challenge Petitioner's confession (Claim VIII, Point A, Argument 4)

Petitioner claims that trial counsel failed to properly challenge Petitioner's confession where he said, "'I haven't cared since December 5th. That's when I killed my mom." (ECF No. 1 at 84) Petitioner notes that the prosecutor referenced this confession in both the beginning of his opening statement, as well as in his closing statement. *Id.* Petitioner maintains that trial counsel should have investigated, developed, and presented a defense to Petitioner's confession, which occurred after a suicide attempt. Specifically, Petitioner asserts that trial counsel "should have done one of the following: (1) adequately cross-examined the State's witnesses about [Petitioner's] statements, (2) put [Petitioner] on the stand, who was eager to testify in his own defense, and/or (3) consulted with and presented a psychologist expert to explain [Petitioner's] behavior and undercut the State's presentation of [Petitioner's] statements to the jury[.]" (ECF No. 1 at 86) Petitioner contends that his trial counsel's failure to hire a mental health expert as to his confession constituted deficient performance.

The Circuit Court of Cole County addressed this issue in response to Petitioner's state habeas petition and found the decision to not call a confession expert to be reasonable trial strategy:

> This is really a claim that counsel should have called an expert to comment on the credibility of Petitioner's spontaneous confession and his other incriminating statements. Experts are prohibited from commenting on credibility. *State v. Ellis*, 512 S.W.3d 816, 839 (Mo. App. W.D. 2016). Counsel could not have called an expert to explain away Petitioner's confession and incriminating statements. Additionally, the expert report provided by Petitioner is damaging to him. Resp. SJ Ex. 18. The report details Petitioner's comments before the murder, for saying that he was going to kill his mother then kill himself. And the report states that Petitioner told the expert that he did make the statement before the murder. This information and other damaging information was successfully kept out of the trial. An expert like the one presented in the exhibit to the petition would have opened the door to such harmful evidence. Counsel acted reasonably in not presenting such an expert, and there was no prejudice. The claim is without merit. *Strickland v. Washington*, 466 U.S. 668 (1984). And the claim is procedurally barred.

(ECF No. 21-89 at 32)

Again, the Court finds that the Cole County Circuit Court reasonably applied *Strickland* and this Court gives deference to the state court decision. Trial counsel made a strategic decision not to open the door to a damaging expert report in an effort to try to explain away his confession. Moreover, the expert report would not have been helpful because the expert could not have testified regarding the credibility of Petitioner's confession. *See State v. Wright*, 247 S.W.3d 161, 168 (Mo. Ct. App. 2008) (expert testimony relating to the credibility of a confession improperly invades the jury's proper realm.). Thus, the Court finds the trial court's performance was reasonable under *Strickland* because there was little benefit and much risk to the presentation of expert confession testimony. Claim VIII, Point A, Argument 4 is denied.

### 5. Trial counsel was not ineffective for failing to "challenge the State's characterization of [Petitioner] as a remorseless killer" (Claim VIII, Point A, Argument 5)

At trial, the prosecutor used Petitioner's reaction to his mother's death against him, portraying Petitioner as a remorseless killer. (ECF No. 1 at 86) Notably, Petitioner was an adult at

the time of trial but only 14 years old when his mother died four years earlier. (ECF No. 1 at 86-87) Petitioner argues that trial counsel should have objected to the State's "prejudicial and unreliable characterization of his client" and failing to rebut this character assassination. (ECF No. 1 at 87) Petitioner argues that his counsel could have provided lay witness testimony regarding his distress over losing his mother; expert Dr. Aaron could have contextualized Petitioner's reaction as an appropriate response given his age and trauma; and expert Jim Trainum could have helped the jury understand how and why law enforcement "so egregiously misjudged" Petitioner. (ECF No. 1 at 87-88) Petitioner argues that "[w]here mental state and motive of a defendant is at issue, the failure to consult with an appropriate expert may constitute ineffective assistance." (ECF No. 1 at 89) Petitioner asserts that, had trial counsel provided expert testimony, then the jury would have sympathized with him and the result of the trial would have been different. *Id*.

This claim is procedurally barred. Petitioner did not present this argument to the Circuit Court of Cole County as part of his state habeas petition. Petitioner, however, presented this claim to the Missouri Supreme Court and it was denied. (ECF No. 21-92, ECF No. 21-99)

As to the merits, the Court finds that Petitioner has not identified any deficient performance by his trial counsel. Petitioner complains that his counsel chose not to employ certain expert testimony, but Petitioner does not identify how the expert testimony would have affected the outcome of the case other than the jury would have sympathized with him. Petitioner does not demonstrate how any additional sympathy for him would have been sufficient to overcome the evidence that Petitioner threatened to kill and confessed to killing his mother. *See Hanes,* 240 F.3d at 698 ("While some of the potential witnesses' testimony could have been helpful in rebutting or clarifying some collateral evidence, we do not believe any of the proffered testimony was so important as to put counsel's failure to consult with or call these witnesses outside the wide bounds

of strategic choices that counsel is afforded."). Indeed, trial counsel likely chose not to present additional testimony regarding Petitioner's reaction to his mother's death because it would have highlighted his lack of emotion and intent to kill his mother. The Court finds no deficient performance under *Strickland* and no basis for relief under Claim XIII, Point A, Argument 5.

### 6. Trial counsel was not ineffective for failing to present evidence of alternate suspects (Claim VIII, Point A, Argument 6)

Petitioner argues that trial counsel was ineffective for failing to conduct any meaningful investigation and presenting no evidence of alternative suspects, despite readily available leads pointing to much more likely suspects. (ECF No. 1 at 90) Petitioner asserts that trial counsel failed to investigate Ed Politte, Petitioner's father, even though he was a suspect from the beginning of the investigation. Petitioner notes that "Counsel did nothing to investigate Ed Politte's motive, whether his alibi was in fact solid, and critically, the possibility that Ed worked with someone else to have Rita killed. Had he done so, he would have uncovered significant evidence that suggests that Ed may have elicited the help of his cousin, Johnnie Politte, in order to pull off the murder." (ECF No. 1 at 91) Petitioner asserts that his trial counsel admitted that he should have investigated Ed Politte as an alternate suspect. (ECF No. 1 at 92) Petitioner complains that, as a result of trial counsel's failure to investigate, the jury never heard that "Ed had clear motive and propensity for this crime, and Johnnie had the opportunity and the direct connection of being seen leaving the scene of the crime as first responders were arriving." (ECF No. 1 at 92) Petitioner further presents the affidavits of several jurors who indicated evidence of an alternate suspect would have made a difference in their decision. (ECF No. 1 at 92-93) Thus, Petitioner claims he was prejudiced by counsel's failure to present evidence of an alternate suspect to the jury. (ECF No. 1 at 93)

The Cole County Circuit Court addressed this issue:

Petitioner alleges that defense counsel should have offered his father, Ed Politte, as an alternate suspect because he had gone through a contentious divorce with the victim, even though Ed Politte lived and worked an hour and a half away in suburban St. Louis. Amended Habeas Petition at 102-09. Petitioner indicates that Ed Politte may have used his cousin, John Politte, with whom he was allegedly close, as the killer. *Id*. In Missouri, for evidence of third party guilt to be admissible the evidence must directly connect the third party with the *corpus delecti* of the crime and clearly point to the person rather [than] the accused as the guilty person. *State v. Nash*, 339 S.W.3d 500, 513 (Mo. 2011). Evidence that merely casts suspicion on another or raises a conjectural inference of commission of the crime by another is not admissible. *Id*. There is no direct connection between Ed Politte and the *corpus delecti* of the murder here. The fact that he had litigated a contentious divorce from the victim, and had a cousin in the general area of the victim's property is inadequate under Missouri law to permit an allegation that he was the real killer. Counsel cannot have been ineffective for not presenting evidence that was inadmissible under Missouri law. *Strickland v. Washington*, 433 U.S. 668 (1984). This claim is also procedurally barred.

(Cole County Decision at 36-37)

This Court holds that the Cole County Circuit Court reasonably applied federal case law when it determined that trial counsel was not ineffective. Petitioner has not demonstrated that trial counsel could have shown a direct connection between Ed Politte and the *corpus delecti* of Rita's murder. Thus, the state court correctly found that Petitioner's theory that Ed Politte was the murderer would have been inadmissible and, thus, he was not prejudiced by trial counsel's performance. Petitioner has not shown deficient performance under *Strickland* and Claim VIII, Point A, Argument 6 fails.

### 7. Trial counsel was not ineffective for failing to present evidence supporting Petitioner's version of events (Claim VIII, Point A, Argument 7)

Similarly, Petitioner contends that trial counsel "breached his duty to conduct a reasonable investigation into what actually happened the night of the murder, and corroboration of [Petitioner's] account of the night, and call vital witnesses of which trial counsel had actual notice." (ECF No. 1 at 93) Petitioner argues that trial counsel's failure to call Josh Sansoucie as a defense

witness was deficient performance because he was the only person, aside from Petitioner, who was inside the trailer at the time of Rita's death and his testimony "would have illuminated for the jury the mystery of what happened inside the trailer in the final hours of Rita's life and provided a more complete story that exculpated [Petitioner]." (ECF No. 1 at 94) Petitioner notes that Sansoucie was deposed 11 days before trial and his testimony remained consistent and he was available to testify at trial. (ECF No. 1 at 94-95) Petitioner contends that Sansoucie's testimony would have negated Petitioner's supposed opportunity and motive because he would have testified that Petitioner did not argue or express frustration with Rita. *Id*. at 95. Further, Petitioner asserts Sansoucie would have testified that Petitioner offered him the option of sleeping on the couch in the living room, which was inconsistent with any assertion that the murder was premeditated. *Id*.

The Cole County Circuit Court addressed this claim and found the trial counsel's decision not to call Sansoucie to be reasonable trial strategy:

> "Generally the selection of witnesses and the introduction of evidence are questions of trial strategy and virtually unchallengeable." *State v. Kenley*, 925 S.W. 2d 250, 266 (Mo. 1997).

> • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

> The decision not to call Sansoucie was a matter of trial strategy of the type that is virtually unchallengeable. Petitioner provides an affidavit from Joshua Sansoucie as an exhibit to the habeas petition. In the affidavit, Sansoucie claims he was wakened in the night by a dog barking and a popping noise, and that he could not see if Petitioner was in bed or not at the time. Sansoucie states that he was deposed, and that he was out in the hallway of the courthouse during trial, but no one called him to testify. Sansoucie also states that he watched video of himself saying that Petitioner was not in his bed at the time Sansoucie woke up in the night, as opposed to Sansoucie not being able to tell whether he was there or not, and he would have believed he said that if he had not seen it on film. *Id*. There would have been little value and great danger in calling Sansoucie. At best, he would have said he did not know if Petitioner was in his bedroom or not when Sansoucie woke up as he claims in his affidavit. He would also likely have confirmed that the two smoked marijuana, and Petitioner set fire on railroad tracks earlier in the evening using gasoline. The claim that counsel should have called the two is without legal merit as well as procedurally barred. *Strickland v. Washington*, 466 U.S. 668 (1984).

(Cole County Decision at 33-24) The Court agrees that the decision not to call Sansoucie was reasonable trial strategy decision that is in keeping with *Strickland* jurisprudence. The state court reasonably found there would have been "little value and great danger in calling Sansoucie" and this determination should not be disturbed by this Court on review. The Court denies Claim VIII, Point A, Argument 7.

### B. Trial counsel was not ineffective for failing to deliver on counsel's opening statement (Claim VIII, Point B)

In Claim VIII, Point B, Petitioner contends that defense counsel was deficient because he overstated his evidence in his opening statement and that the prosecutor identified these deficiencies during his closing arguments. (ECF No. 1 at 98-100) In closing argument, the prosecutor noted that defense counsel presented no evidence that Petitioner was interrogated for hours, that juvenile officers wrote notes to law enforcement officers during this interrogation, or that they seized the clothes. (ECF No. 1 at 96 (citing Transcript at 771-773)) Petitioner argues that he was prejudiced by his counsel's unfulfilled promises in his opening statement deficient performance, which allowed the prosecutor to criticize the defense case and damaged counsel's credibility in the eyes of the jury. (ECF No. 1 at 100)

This claim was not included in Petitioner's habeas corpus petition in Cole County but was in his petition presented and denied in the Missouri Supreme Court. (ECF Nos. 21-91, 21-99) This claim is without merit and procedurally barred because it was not presented during the ordinary course of review. As to the merits, Petitioner has not shown that there likely would have been a different result if trial counsel had presented its arguments differently. Further, the jury was instructed that arguments are not evidence. (ECF No. 21-11 at 5) That is, "[a] jury is presumed to

follow its instructions." *Weeks v. Angelone,* 528 U.S. 225, 234 (2000); *United States v. Flute,* 363 F.3d 676, 678 (8th Cir. 2004). The Court finds no ineffectiveness under the *Strickland* standard.

### C.  Trial counsel was not effective for advising Petitioner not to testify (Claim VIII, Point C)

In Claim VIII, Point C, Petitioner argues that his trial counsel was ineffective for  failing to prepare him to testify and for advising him not to testify; he asserts the state court unreasonably applied *Strickland* and unreasonably determined facts. (ECF No. 29 at 28-29) Petitioner contended that his attorney refused to allow him to prepare to testify at trial:

> Judge: What did you ask him to do that he refused to do?
>
> Petitioner: Getting ready to get put on the stand to testify. He never did. A week before my trial he came to see me. He said later on in the week he was going to come, start asking me questions, getting me ready for the stand, because I told him I wanted to testify. He never showed up. And third day of my trial he pulled me out there, he said, I don't think you should testify, because you're not ready. I said okay.

(ECF No. 10-2 at 860-61) Petitioner ultimately told the Judge that he was not satisfied with the services rendered to him. (ECF No. 10-2 at 861) Petitioner argues that his decision not to testify was "not knowing and voluntary waiver" but instead "was tainted and undermined by counsel's ineffectiveness." (ECF No. 29 at 30) Petitioner claims that neither counsel nor Petitioner could make an adequately informed decision weighing the benefits and risks of Petitioner taking the stand under these circumstances. *Id*. Thus, Petitioner argues that his "counsel was ineffective for failing to prepare [him] to testify and advising him not to testify without adequate investigation or preparation." (ECF No. 29 at 30) Petitioner contends that he was "one of only two people who could testify to what happened the morning of Rita's death, put questions jurors had to rest, provide the jury with an accurate picture of how much he loves his mother, and protect his innocence." (ECF No. 29 at 33) Given that the jury did not get an opportunity to hear from him, Petitioner

34

argues that "[b]ut for defense counsel's failure to both challenge the State's evidence and to allow [Petitioner] to give exculpatory testimony, [Petitioner] would not have been convicted." (ECF No. 29 at 33)

"Generally the selection of witnesses and the introduction of evidence are questions of trial strategy and virtually interchangeable." *State v. Kenley*, 925 S.W. 2d 250, 266 (Mo. 1997). According to the state court, "[t]he transcript indicates Petitioner testified that after consultation with counsel he made an independent decision not to testify in his case knowing that it was his decision whether to testify. … Counsel could not have forced him to testify. And the decision not testify (sic) was prudent." (ECF No. 21-89 at 33) Petitioner testified that after consultation with counsel he made an independent decision not to testify in his case knowing that it was his decision whether to testify. Counsel could not have forced him to testify and the decision not to testify was prudent. Testimony by Petitioner could have opened the door to his past bad conduct including his threats to kill his mother. The claim is without merit as well as procedurally barred because it was not presented within the ordinary course of review. Claim VIII, Point C fails.

### D. Trial counsel was not ineffective for failing to ask the Prosecutor to call Petitioner "Michael" instead of his Nickname "Bernie" (Claim VIII, Point D)

Petitioner's name is Michael Bernard but his friends apparently called him "Bernie". He claims that his counsel was ineffective for not objecting to the use of the name "Bernie" because it would be mistaken as a nickname for an arsonist. (ECF No. 1 at 104-105) One juror even assumed that Petitioner's name was spelled "Burny" because he liked to burn things. *Id*. This claim was not raised in the state habeas petition in Cole County but was presented to the Missouri Supreme Court. (ECF No. 21-91, 21-99)

The Court finds that this insinuation, based upon Petitioner's nickname, is not the basis for relief. Petitioner has not shown either prong of prejudice from *Strickland*. Notably, Petitioner did not recognize or raise this claim until years after trial and after his amended state habeas petition in Cole County Circuit Court, and there is no reasonable probability that Petitioner's name changed the outcome of the trial. Further, a juror's affidavit cannot be used to impeach the jury's verdict. *See Williams v. Daus*, 114 S.W.3d 351, 364 (Mo. Ct. App. 2003) (citing *Travis v. Stone,* 66 S.W.3d 1, 4 (Mo. banc 2002)("The general rule in Missouri is that a juror's testimony about jury misconduct allegedly affecting deliberations may not be used to impeach the jury's verdict."). The Court finds that the Missouri Supreme Court reasonably applied *Strickland* and denies Claim VIII, Point D.

### E.  Petitioner was not prejudiced by counsel's actions (Claim VIII, Point E)

In Claim VIII, Point E, Petitioner argues that trial counsel's deficient performance prejudiced him. (ECF No. 1 at 105) Petitioner contends that trial counsel's "myriad deficiencies must be evaluated cumulatively, considering the totality of the evidence that would be before the jury had counsel performed reasonably." (ECF No. 1 at 105) Petitioner contends that the evidence against him was weak and that "[j]urors have come forward today to unequivocally assert that had trial counsel investigated and presented the evidence of viable alternative suspects, and challenged the State's gasoline evidence, they would have acquitted." (ECF No. 1 at 106) Petitioner emphasizes statements from jurors that they would have acquitted if they had been presented additional information. Likewise, Petitioner states that, for his remaining *Strickland* claims, the Cole County Circuit Court did not provide a reasoned decision and the Court should review these claims *de novo*. (ECF No. 29 at 33) Petitioner asserts that the Circuit Court relied on untested hearsay evidence to deny Petitioner's claims. (ECF No. 29 at 34)

Petitioner's inadmissible juror affidavits and attacks on the prosecutor do not demonstrate prejudice. The Missouri Supreme Court acted reasonably in rejecting it, to the extent there is a claim. Petitioner's claim presents an improper attempt to aggregate alleged prejudice from different claims, which fail. *See Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006) (to argue that *Strickland* prejudice can be aggregated from multiple acts or omissions is contrary to Eighth Circuit precedent as each claim must stand or fall on its own). Indeed, the Eighth Circuit has held "[w]e do not understand the *Strickland* standard to demand this sort of cumulative performance inquiry, *see Wainwright v. Lockhart,* 80 F.3d 1226, 1233 (8th Cir.1996) ("Errors that are not unconstitutional individually cannot be added together to create a constitutional violation. Neither cumulative effect of trial errors nor cumulative effect of attorney errors are grounds for habeas relief." (internal citation omitted)), nor does [appellant] direct us to a Supreme Court decision supporting his assertion." *Forrest v. Steele*, 764 F.3d 848, 860 (8th Cir. 2014). Thus, the Court denies Claim VIII, Point E.

## F.  Direct Appeal Counsel  was Effective

Finally, Petitioner argues that "[t]o the extent appellate counsel could have or should have raised any of the above deficiencies of trial counsel, or other constitutional violations, in [Petitioner's] direct appeal, he was ineffective for failing to do so." (ECF No. 1 at 107) Petitioner claims that appellate counsel as ineffective for failing to advise [Petitioner] that he must file a Rule 29.15 motion for new trial in order to preserve his constitutional claims. (ECF No. 1 at 108) Because *Strickland* claims are not raised on direct appeal in Missouri, Petitioner's Rule 29.15 motion was "his first and only meaningful opportunity to pursue and preserve these compelling constitutional claims." *Id*.

This claim was not included in the Amended Petition for Habeas Corpus filed in Cole County. Petitioner, however, raised this claim in the Missouri Supreme Court. (ECF No. 21-91; 21-99) As noted by Respondent, this claim raises nothing. (ECF No. 21 at 53) Ineffective assistance of trial counsel claims must be raised in the post-conviction review process in Missouri, not on direct appeal. *State v. Mitchell*, 41 S.W.3d 574, 579 (Mo. App. S.D. 2001).

Further, as to Petitioner's claim that direct appeal counsel, who did not represent Petitioner in the post-conviction case, was ineffective for not advising Petitioner about the filing deadline for a Rule 29.15 post-conviction motion (ECF No. 1 at 105), the Court finds this not to be a basis for relief. The trial court informed Petitioner on the record regarding claims that could be filed in a Rule 29.15 motion and the time limits for filing a Rule 29.15 motion but Petitioner failed to file such a motion, which was not the fault of his direct appeal counsel. To show prejudice from a claim of ineffective assistance of counsel, a petitioner must show a reasonably probability that but for the alleged error that the outcome of the proceeding at which counsel represented the petitioner would have been different, rather than that he would have ultimately prevailed in a later proceeding. *See Kennedy v. Kemna*, 666 F.3d 472, 485 (8th Cir. 2012); *Bode v. State,* 203 S.W.3d 262, 269 (Mo. Ct. App. 2006) ("[I]n order to show *Strickland* prejudice in the context of ineffective assistance of trial counsel, the appellant must show that but for the alleged professional errors of trial counsel, the outcome of his trial would have been different, ... not the outcome of any direct appeal."). As discussed, Petitioner has not shown that the outcome of his trial would have been different; thus, this claim fails as well.

## G.  Court review of Ineffective Assistance of Direct Appeal Counsel Claim

Petitioner asserts that this Court may review his ineffective assistance of counsel claims. Petitioner notes that, prior to the Rule 91 filing in Cole County Circuit Court, no court has ever

been presented with his counsel's failures, his resulting prejudice, or an evidentiary hearing regarding the same. Petitioner maintains that his defense was "insufficient and violated his constitutional right to counsel." (ECF No. 1 at 108-09) Petitioner contends that this is the first time that his rights can be vindicated by any court on these new claims and "they are thus properly presented." (ECF No. at 109) In addition, Petitioner contends that his actual innocence overcomes any potential procedural bar. *Id*. Petitioner asserts that his father's deception by lying that he had retained counsel to file a Rule 29.15 motion, as well has the ineffectiveness of counsel, "particularly appellate counsel, also constitutes cause and prejudice." *Id*. Finally, Petitioner posits that his failure to preserve these claims are excused by *Martinez v. Ryan*, 566 U.S. 1 (2012).

Respondent notes that the court informed Petitioner on the record the claims he could file a Rule 29.15 post-conviction motion and the time limits for filing said motion. (Trial Transcript 839-40) Petitioner, however, did not file a Rule 29.15 post-conviction motion.

Direct appeal counsel is not ineffective for Petitioner's failure to file a Rule 29.15 motion. To show prejudice from a claim of ineffective assistance of counsel, a petitioner must show a reasonably probability that but-for the alleged error that the outcome of the proceeding at which counsel represented the petitioner would have been different, rather than that he would have ultimately prevailed in a later proceeding. *See Kennedy*, 666 F.3d at 485; *Bode,* 203 S.W.3d at 269. Direct appeal counsel cannot be blamed for failing to file a Rule 29.15 post-conviction relief motion, nor can he show that the outcome of that proceeding would have been different but-for this failure. Similarly, Petitioner cannot blame his father when Petitioner did not perform his obligation to file a Rule 29.15 motion. Petitioner has not shown that his direct counsel was deficient under *Strickland* and this claim fails.

39

### IX. Actual Innocence

Finally, Petitioner argues that he is actually innocent. (ECF No. 1 at 109) He states that "new evidence from new witnesses implicat[e] a different suspect" and "new scientific evidence … conclusively proves his innocence, permitting this Court to reach his claims of constitutional defect through the *Schlup v. Delo* innocence gateway." *Id.*; *Schlup v. Delo,* 513 U.S. 298 (1995).

In *Schlup v. Delo* the Supreme Court held that a petitioner can obtain review of procedurally defaulted claims if he produces reliable new evidence not available at trial which demonstrates that it is more likely than not, that with this evidence, no reasonable juror would have convicted him. *Id.* at 326–28. If a petitioner presents sufficient evidence of actual innocence, he should be allowed through this gateway permitting him to argue the merits of his underlying constitutional claims. *Id.* at 314–16. In deciding whether a petitioner has made the necessary showing of innocence, a federal court must make its own determination of whether the "probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial" is sufficient to warrant consideration of the otherwise barred claims. *Id.* at 330–32; *Bannister v. Delo,* 100 F.3d 610, 617 (8th Cir.1996).

Petitioner argues that no reasonable juror would have convicted him had they been presented with the new evidence now before this court including that: (1) Petitioner did not have gasoline on his shoes; (2) there is no evidence that an accelerant was used, because lab tests were negative for accelerant and there is no way to determine the ignition source or speed of this fire – which overturns the State's entire trial theory; (3) a new witness emphasizes Petitioner's lack of motive; (4) multiple new witnesses with compelling, reliable evidence consistently point to another perpetrator, Johnnie Politte; (5) new witnesses providing additional evidence pointing to Ed Politte, including but limited to former Deputy Sheriff Tammy Nash (formerly Belfield); and (6)

a new witness, a former law enforcement officer involved in the investigation of this case, has come forward because she believes Petitioner is innocent, and to explain flaws in this investigation. (ECF No. 1 at 111-12) Petitioner claims that State's evidence was weak, based upon "law enforcement's misinformed, biased judgments about [Petitioner's] behavior and his alleged, hotly disputed statement while trying to kill himself," and are also fatally undermined by new evidence, including science and expert analysis. (ECF No. 1 at 112) Petitioner points to a juror's testimony that the juror would not have found him guilty based upon the totality of evidence available today, particularly the absence of gasoline on Petitioner's shoes and that the fire was not started with gasoline. (ECF No. 1 at 112-13)

The Court finds that Petitioner does not satisfy the actual innocence test from *Schlup v. Delo*, just as the Cole County Circuit Court found during state habeas proceedings. (Cole County Decision at 20-24) The evidence that Petitioner cites is not new. Similar evidence was available to the prosecutor, trial counsel, and the court at trial. Petitioner contends that his cousin Johnnie Politte was the true murderer, citing witnesses who saw him walking near the victim's home around the time of the murder. However, these witnesses and their testimony were available at the time of trial. Petitioner also purports to blame his father, Ed Politte, who was working in St. Louis County at an auto plant on the night of the murder. Again, notwithstanding his alibi, Petitioner's father's identity and possible motive are not new evidence that would satisfy the actual innocence test.

Further, even if the evidence that Johnnie Politte and Ed Politte were the killers, that Petitioner did not have gasoline on his shoes, that lab tests before trial did not show accelerants in the house, and that jurors purportedly have changed their minds were considered "new evidence," this evidence is insufficient to prove that no reasonable juror would have convicted Petitioner.

41

Petitioner admittedly stated that he was going to kill his mother and then himself; on the night of the murder, he burned a railroad tie near his home with the same burn pattern found on his mother; and he also confessed to murdering his mother a month later. Based upon this ample evidence, and as found by Cole County Circuit Court during state habeas proceedings, this Court holds that this is not an actual innocence case upon which no reasonable juror could convict. *See* Cole County Decision.

## X.    Conclusion

Based on the foregoing, the Court finds that Petitioner's request for relief pursuant to 28 U.S.C. § 2254 should be denied. The Court finds that the state court's findings and conclusions regarding Petitioner's claims were not contrary to, nor do they involve, an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, nor did they result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Further, because Petitioner has made no showing of a denial of a constitutional right, the Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2); *Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Michael Politte's petition for writ of habeas corpus (ECF No. 1) **DENIED.**

**IT IS FURTHER ORDERED** that John Mosley is substituted as the Respondent in this action pursuant to Fed. R. Civ. P. 25(d).

**IT IS FINALLY ORDERED** that Petitioner has not made a substantial showing of a denial of a constitutional right and this Court will not issue a Certificate of Appealability. A separate Judgment of Dismissal in accord with this Order is entered on this same date.

Dated this 18th day of February, 2026.

JOSEPH S. DUEKER
UNITED STATES MAGISTRATE JUDGE